UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/06/2022
```

KIM MORTIMER,

                              Plaintiff,

              -against-

SCOTT GRODSKY, et al.,

                             Defendants.

22-cv-6926 (LJL)

ORDER OF DISMISSAL

LEWIS J. LIMAN, United States District Judge:

      Plaintiff brings this *pro se* action, for which the filing fees have been paid, alleging that Defendants violated her rights under federal and New York state law. For the reasons set forth below, the Court dismisses the complaint but grants Plaintiff 30 days' leave to replead her federal claims against the City of New York and the John or Jane Doe New York City Police Department (NYPD) officers.

**STANDARD OF REVIEW**

      The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fees, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court also may dismiss an action for failure to state a claim, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they

*suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

Although *pro se* litigants enjoy the Court's "special solicitude," *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (*per curiam*), their pleadings must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Id.* (citing *Twombly*, 550 U.S. at 555). But the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). As set forth in *Iqbal*:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Id*. (internal citations, quotation marks, and alteration omitted). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Kim Mortimer invokes the court's federal question jurisdiction, alleging that Defendants engaged in a "Fraud for Profit Scheme" in which they conspired to "defraud the Plaintiff by obtaining money and property by means of false and fraudulent pretenses." (ECF 1, at 2.) She names the following parties as defendants: (1) Scott Grodsky, President of 2386

Hempstead Incorporated; (2) 2386 Hempstead Incorporated, which Plaintiff describes as a "hard-money private lender" that lends money to "private individuals whose property is financially distressed and in need of a loan" (ECF 1, at 5); (3) James Kocoris Esq., an "attorney and Partner of Moberg and Kocoris LLC and General Abstract & Settlement Services" (*id.* at 5); (4) law firm Moberg and Kocoris P.C.; (5) General Abstract & Settlement Services; (6) Jay Waldhauser, an attorney who previously represented Plaintiff in one of the transactions giving rise to her claims; (7) Robert Windfield; (8) ASAP Consulting, which is "a consulting company, a broker and hard-money lender" (*id.* at 7); (9) ASAP Consulting Principal Anatasia Koulouris; (10) Tri Coastal Abstract, a.k.a. Tri Coast Title, an abstract and title company; (11) Intercoastal Abstract Company; (12) Intracoastal Abstract; (13) Bill Wilson, a.k.a. William E. Wilson, whom Plaintiff describes as "President, affiliate or employee" of Tri Coastal Abstract (*id.* at 8); (14) William Horneff, a.k.a. Van Horneff, who along with John and Elizabeth (who is not named here) are "purported to be a business with an interest in private hard-money lending to distressed borrowers" (*id.* at 9); (15) John Horneff; (16) real estate law firm Zeichner Ellman & Krause LLP; (17) Zeichner Ellman & Krause "managing partner, owner and principle [sic]" Mark Schlussel (*id.*); (18) attorney Aliya Nelson Esq.; (19) the City of New York; (20) NYPD John/Jane Doe Officers 1-10; and (21) Jane Doe 1-15.

   Plaintiff alleges that Defendants engaged in a "'Fraud for Profit' Scheme" by which they used their "specialized knowledge, power and authority to misuse the mortgage lending process and the judicial system to commit mortgage insurance fraud and to defraud the Plaintiff of no less than" $500,000. (*Id.*, at 2.) The alleged scheme "involved the collusion of industry insiders, which included bank officers, private lenders, appraisers, mortgage services agents, mortgage brokers, attorneys, loan originators, court appointed referees, mortgage closers, mortgage

abstract companies, title insurance complaints, and Court appointed personnel." (*Id.*) In short, Defendants made representations and promises to Plaintiff that "coerce[d]" her into entering in a mortgage agreement that placed Plaintiff's property and business "into financial distress" and caused her to lose her home and business. (*Id.*)

    The complaint, which is often repetitive and difficult to understand, describes a series of transactions which appear to have occurred between 2014 and 2016 in which Plaintiff sought to obtain or refinance a mortgage on a piece of real property in Manhattan owned by the 60 91st Street Corporation.[1] For example, in 2015, Winfield and Grodsky told Plaintiff they would be willing to lend $1.4 million if Plaintiff would guarantee the loan. Plaintiff "was never given the documents which accurately detailed the charges, fees, or costs of the loan." (*Id.* at 14.) They "told Plaintiff that she would be paying one rate but ultimately, [Plaintiff] paid a complete new and different rate" which she "never agreed to." (*Id.*) Grodsky and Winfield "made materially false representations to Plaintiff in order to induce Plaintiff into entering into and guaranteeing a mortgage that they alleged was more affordable – but was not." (*Id.*)

    Waldhauser represented Plaintiff in her efforts to guarantee the mortgage. Plaintiff alleges she did not receive the "$142K cash out at the closing which Defendant Gro[d]sky and Winfield agreed to." (*Id.* at 18.) She notified Waldhauser of what she believed to be "inaccurate accounting" on many of the documents, and told him that she believed she was entitled to more money. (*Id.* at 18-19.) Waldhauser told Plaintiff that "he could do nothing" and directed her to contact Intra Coastal Abstract. (*Id.* at 19.) Intra Coastal Abstract's attorney told Plaintiff she must contact Kocoris, who was the "lender's" attorney. (*Id.*) Plaintiff contacted "DHCR's Legal

---

[1] Plaintiff alleged in a prior action that she is the sole shareholder of the 60 91st Street Corporation. *See Mortimer v. Grodsky*, No. 20-CV-8192, 6, at 3 (S.D.N.Y. Nov. 13, 2020).

Assistant,"[2] who told Plaintiff that "not only had the outstanding judgments from her agency been satisfied, but also that the Department had also received $11,000 of over payment which was returned." (*Id.*) Plaintiff requested "a copy of the cancelled check and letter which was sent to Tri Co[a]stal Abstract," but the check was never forwarded to Plaintiff. (*Id.*) She learned that the "check and correspondence was returned to Defendant William Wilson of Inter Co[a]stal Abstract." (*Id.*) Plaintiff alleges that it was never disclosed to her who Wilson was or his relationship to the closing. Nor was it ever disclosed to Plaintiff "what Defendant inter Co[a]stal Abstract was or its role or involvement in the 2015 closing" and "up to this point Plaintiff had never heard of Tri Co[a]stal Abstract Company." (*Id.*) Plaintiff alleges "[u]pon information and belief Defendant Tri Co[a]stal Abstract was attempting to conceal its involvement in the loan." (*Id.*)

In what appears to be a separate incident, Plaintiff alleges that Schlussel and Zeichner, Ellman and Kraus LLP violated the attorney-client privilege when Schlussel disclosed confidential information given to him by Plaintiff's brother in the course of a separate real estate matter, and used that information to "enrich[ ] himself by representing the adversary of the Plaintiff." (*Id.* at 34.)

Plaintiff enumerates eight causes of action: (1) violations of New York State General Business Law 349, which prohibits deceptive business practices; (2) violations of the implied covenant of good faith and fair business dealings; (3) fraud and misrepresentation; (4) unjust enrichment against Defendants Schlussel and Zeichner, Ellman and Kraus; (5) fraudulent inducement; (6) "punitive damages"; (7) substantive due process; and (8) procedural due

---

[2] Although Plaintiff does not sufficiently identify "DHCR," it may be a reference to the New York State Division of Housing and Community Renewal.

5

process.³ Plaintiff also invokes 42 U.S.C. §§ 1983, 1988, 1985; the Fourth, Fifth, and Fourteenth Amendments; and 18 U.S.C. §§ 1343, 1349. (*See id.* at 2.)

Plaintiff seeks compensatory and punitive damages.

## DISCUSSION

**A.    Claims under 42 U.S.C. § 1983**

The Court must dismiss Plaintiff's constitutional claims against all private defendants. To state a claim under this statute, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). "Because the United States Constitution regulates only the Government, not private parties, [in a claim brought under Section 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted). Private parties are generally not state actors, and are therefore not usually liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Moreover, absent special circumstances suggesting concerted action between an attorney and a state representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private attorney's or private law firm's legal representation of a private entity does not constitute the degree of state involvement necessary for a claim under Section 1983, regardless of whether that attorney or firm is privately retained, court-appointed, or employed as a public defender, *see*

---

³ Plaintiff numbers her last two causes of action as "Second Claim" and "1st Claim," respectively.

*Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981), and *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that a legal aid organization ordinarily is not a state actor for purposes of Section 1983); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position.").

Here, all of the defendants, with the exception of the City of New York and the ten John or Jane Doe NYPD officers, are private attorneys, private law firms, private financial professionals, or other private individuals or entities. Plaintiff does not allege any facts suggesting that any of these private defendants were acting under color of law when they allegedly injured her. The Court therefore dismisses Plaintiff's Section 1983 claims against the private defendants for failure to state a claim on which relief may be granted.

Plaintiff also names as defendants the City of New York and ten John or Jane Doe NYPD officers. While these defendants are state actors under Section 1983, Plaintiff fails to allege any facts suggesting that any of these defendants violated her federal rights. Plaintiff's sole allegation with regards to either the City of the NYPD officer is that in or around 2017, "in an effort to expose the fraud she had been a victim of," Plaintiff filed complaints with multiple local, state, and federal agencies which included "NYC Police Department 24th Precin[ct]," but she did not receive a response. (ECF 1, at 25.) To the extent Plaintiff is seeking to hold the City of the NYPD officers liable for failing to investigate her complaint, she fails to state a claim. That is because there is no right to either government assistance or to an investigation by government officials. *See DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195-96 (1989) (the Due

7

Process Clause generally confers no affirmative right to governmental aid); *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (holding that there is " no constitutional right to an investigation by government officials" ) (citation omitted).[4]

Because Plaintiff may be able to allege additional facts suggesting that the City of New York or the John or Jane Doe NYPD officers violated her federal constitutional rights, the Court grants Plaintiff leave to file an amended complaint asserting claims against these defendants.

**B.     Claims under 42 U.S.C. §§ 1985, 1988**

The complaint suggests that Plaintiff may also be attempting to assert claims under 42 U.S.C. §§ 1985 and 1988. (*See* ECF 1, at 2.) Plaintiff fails to state a claim under either statute. Plaintiff's allegations appear to suggest that she is attempting to assert claims of conspiracy under Section 1985(3). To state such a claim, a plaintiff must show that there exists: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted). Vague and unsupported assertions of a claim of conspiracy will not suffice. *See, e.g., Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v.*

---

[4] The Second Circuit has recognized two exceptions to the general rule that the State has no duty to investigate or protect individuals: First, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 200. Second, the government may assume some obligation when it affirmatively creates or increases the danger. *See Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993). Neither exception applies here.

*Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Here, many of Plaintiff's allegations are vague and conclusory and, in any event, she does not assert any facts suggesting that any alleged conspiracy was motivated by racial or other class-based discriminatory animus.

Plaintiff also invokes Section 1988, which allows a prevailing party in an action enforcing certain civil rights laws to recover reasonable attorney's fees. *See* 42 U.S.C. § 1988(b). *Pro se* litigants are not entitled to attorney's fees under Section 1988. *See Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991).

The Court therefore dismisses Plaintiff's claims under Sections 1985 and 1988 for failure to state a claim on which relief may be granted.

C.      **Claims under 18 U.S.C. §§ 1343, 1349**

Plaintiff also purports to assert claims under 18 U.S.C. §§ 1343 and 1349, which are federal criminal statutes prohibiting various types of fraud.[5] Plaintiff cannot initiate the arrest and prosecution of an individual in this Court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses the Plaintiff's claims under Sections 1343 and 1349 for failure to state a claim on which relief may be granted.

---

[5] Section 1343 prohibits fraud by wire, radio, and television and Section 1349 prohibits attempt and conspiracy to commit fraud.

9

**D.     Claims under state law**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction."[6] 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). If Plaintiff fails to state a claim under federal law in her amended complaint, the state-law claims against Defendants will be dismissed under 28 U.S.C. § 1367(c)(3) without prejudice to Plaintiff's pursuing those claims in an appropriate state-court forum.

**E.     Plaintiff's prior action**

Plaintiff has previously filed a similar action in this court against many of the same defendants. In *Mortimer v. Grodsky*, No. 20-CV-8192 (LLS) (S.D.N.Y. Nov. 13, 2020), Plaintiff asserted claims on her own behalf and on behalf of 60 91st Street Corporation under many of the same state and federal laws as she does here, arising from what appear to be many of the same transactions that are the focus of this complaint. In that action, Plaintiff requested criminal prosecution of the defendants and money damages, and also asked the court to temporarily enjoin the sale, marketing, or auction of property owned by the 60 91st Street Corporation including the real property at issue here, which at the time was the subject of ongoing proceedings in the United States Bankruptcy Court for the Southern District of New York. Plaintiff further requested that the court recalculate a state-court referee's calculations with

---

[6] Because Plaintiff alleges that she and many of the defendants are residents of New York State, the Court lacks diversity of citizenship jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1332.

regard to the foreclosure of real property, and that the court enjoin sanctions levied against Plaintiff by the Bankruptcy Court.

By order dated November 13, 2020, Judge Louis Stanton (1) dismissed Plaintiff's claims on behalf of the 60 91st Street Corporation without prejudice because, as a non-attorney, Plaintiff may not assert claims on behalf of corporation; (2) dismissed Plaintiff's claims challenging the Bankruptcy Court's sanctions against her as duplicative of her then-pending appeal in the bankruptcy proceeding; (3) dismissed Plaintiff's claims seeking criminal prosecution for failure to state a claim; (4) dismissed Plaintiff's claims under Section 1983 because all defendants were private parties and Plaintiff failed to allege facts showing that they were acting under color of law; (5) dismissed Plaintiff's claims under Section 1985 for failure to state a claim; and (6) declined to exercise supplemental jurisdiction of any state-law claims Plaintiff was asserting.

Even if Plaintiff's complaint in the current action did not suffer from the deficiencies identified above, many of Plaintiff's claims against the defendants who were named in the prior action would likely be barred on claim preclusion or *res judicata* grounds based on Judge Stanton's November 13, 2020, order of dismissal in *Mortimer*, ECF 1:20-CV-8192, 6.[7] Furthermore, the Court finds that Plaintiff was or should have been aware that her previously asserted claims lacked merit when she filed the complaint in this action. *See Sledge v. Kooi*, 564 F.3d 105, 109-10 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements).

---

[7] Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a new case that includes claims or defenses that were or could have been raised in an earlier case in which the same parties were involved if that case resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594, 206 L. Ed. 2d 893 (2020).

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because the Court cannot say at this stage that amendment of Plaintiff's against the City of New York and the NYPD officers would be futile, the Court grants Plaintiff 30 days' leave to file an amended complaint detailing her federal claims against the City of New York and the NYPD police officers. Plaintiff may not reassert any federal claims that have previously been dismissed.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information may include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

    d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court at least enough for the Court to understand: who violated her federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses the complaint for failure to state a claim on which relief may be granted.

Plaintiff is granted 30 days' leave to file an amended complaint that complies with the standards set forth above.

Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-6926 (LJL). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the Court will direct the Clerk of Court to enter judgment consistent with this order.

The Clerk of Court is instructed to hold this matter open on the docket until a judgment is entered.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   September 6, 2022
        New York, New York

                                            LEWIS J. LIMAN
                                      United States District Judge